IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02086-KMT

CAROL TAVERNIER,

      Plaintiff,

v.

COLORADO STATE BOARD OF NURSING,
WENDY COLON, in her official capacity,
MATTHEW FOGEL, in his official capacity,
KRISTINE REUSS, in her official capacity,
THERESA CURE, in her official capacity,
AMY STORM, in her official capacity,
JOE NEGUSE, in his official capacity,

      Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants Colorado Board of Nursing, Wendy Colon, Matthew Fogel, Kristine Reuss, Theresa Cure, Amy Storm and Joe Neguse, all named in their official capacities, move to dismiss Plaintiff's claims for relief, including claims for preliminary injunctive relief, pursuant to Fed. R. Civ. P. 12(b)(6).  In support thereof, Defendants state the following:

### INTRODUCTION

Plaintiff, Carol Tavernier, a registered nurse licensed by the State of Colorado, brings claims that arise from the lawful and appropriate disciplinary action taken against her professional license by the Colorado Board of Nursing

("Board") in 2016.  Defendants include current members of the Board of Nursing, an agency of the Division of Professions and Occupations, within the Colorado Department of Regulatory Agencies ("DORA").  *See* §12-38-104, C.R.S.  Plaintiff has also brought claims against the Executive Director of DORA, Joe Neguse, and DORA staff member, Amy Storm.[1]  [Compl., ¶¶28-30].  Plaintiff has brought a Fourteenth Amendment Due Process claim pursuant to 42 U.S.C. § 1983 and a claim for violations of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C, § 12132, 35 C.F.R § 35.130(b)(6), in connection with certain restrictions placed on her professional license and the publishing of the same on the Department's website.

Plaintiff's claims for damages cannot proceed because the individual Board members, DORA Executive Director Neguse, and Manager Storm, are each entitled to the protections of quasi-judicial immunity for all disciplinary action taken against Plaintiff's professional license.  Plaintiff's Title II ADA claims are barred by the Eleventh Amendment, as expressly held by the Tenth Circuit in *Guttman v. Khasla*, 669 F.3d 1101 (10th Cir. 2012).  With respect to Plaintiff's Fourteenth Amendment due process claims for damages, Defendants are entitled to the protections of qualified immunity for their good faith exercise of discretionary functions to protect the public in the delivery of healthcare services.  Even if

---

[1] Plaintiff has misidentified Defendant Amy Storm as the Board of Nursing Program Director.  Ms. Storm is employed as an Intake and Contract Manager for the Board.

2

Plaintiff had stated violations of her procedural due process rights against the Defendants, these rights were not clearly established and therefore immunity must lie.

## BACKGROUND

Plaintiff Carol Tavernier has been licensed as a Registered Nurse in Colorado since 2011. [Compl., ¶12]. In December 2013, Plaintiff was working for Pikes Peak Hospice and Palliative Care in Colorado Springs, providing nursing services to patients in their homes. [Compl., ¶¶14-15]. After completing two audits of her charting in 2013, Pikes Peak terminated Plaintiff's employment. [Compl., ¶¶27-33]. As a result of the deficits discovered in Plaintiff's charting, Pikes Peak made a complaint concerning Plaintiff to the Colorado State Board of Nursing. [Compl., ¶34].

In December 2014, the Board ordered Tavernier to undergo a mental examination by experts chosen by the Board. [Compl., ¶¶35-43]. Based on neuropsychological testing, Dr. Stephanie S. Huzij, PhD, concluded Plaintiff suffered from a learning disability which included memory deficits. *Id.*

The Board offered to enter into a stipulation with Plaintiff that imposed a two year probationary period restricting her practice and requiring a Practice Monitor. [Compl., ¶¶44-45]. The Stipulation also provided that Plaintiff was subject to discipline pursuant to §§ 12-38-117(1)(c), (f), (h) and (j), C.R.S. [Compl.,

3

¶53]. Plaintiff executed the Stipulation but claims that she did not understand the terms of the Stipulation, did not understand that the agreement was optional and that she had a right to a hearing in lieu of executing the Stipulation. [Compl., ¶¶46, 48-54]. Following the execution of the Stipulation, the Board published the disciplinary action on its website. [Compl., ¶57].

On March 22, 2016, Plaintiff's counsel petitioned the Board to set aside the Stipulation or to grant her a hearing on the issue of whether she made a knowing and voluntary waiver of her right to a hearing. [Compl., ¶¶58-59]. The Board's Panel B considered her petition on July 27 and denied her request for a hearing. [Compl., ¶¶60-62]. This litigation followed.

## ARGUMENT

### I.      Standard

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the factual allegations plaintiff asserts must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). In order to survive a 12(b)(6) motion to dismiss, a party must state allegations sufficient to "plausibly" support a legal claim for relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* The court is not obliged to take as true a legal conclusion couched as a factual allegation. *Id.* at 678. Dismissal is proper "where the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. If the allegations in a complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting *Twombly,* 550 U.S. at 570).

Plaintiff's Complaint must also contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Once the labels, formulaic recitations, legal conclusions, and merely conclusory allegations are removed, if the remaining factual allegations do not "raise a right to relief above the speculative level" then the court must dismiss for a failure to state a claim. *Twombly,* 550 U.S. at 555.[2]

## II.   The Board Members and Board staff are entitled to the protections of absolute quasi-judicial immunity for all actions taken with respect to Plaintiff's RN license.

"Judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts that are in excess of their jurisdiction, and are alleged

---

[2] In Section 1983 cases, "it is particularly important . . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, and, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robins v. Olkahoma*, 519 F.3d 1158, 1250 (10th Cir. 2008) (emphasis in original). Plaintiff makes no effort to parse out the allegations among the various Defendants but rather for each allegation and each claim, she refers to the "Defendants" as a group.  The Complaint fails to put each individual Defendant on notice of precisely what misconduct by whom allegedly violated Ms. Tavernier's rights or constituted tortious conduct, and therefore, must be dismissed.

to have been done maliciously or corruptly." *Stump v. Sparkman,* 435 U.S. 349, 355-56 (1978).  That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors."  *Id.* at 359.  "The doctrine of absolute immunity ensures judges and judicial officers perform their duties vigorously and without fear of time-consuming, costly, 'vindictive or ill-founded damage suits brought on account of action taken in the exercise of their official responsibilities.'"  *Coleman v. Farnsworth*, 90 Fed. Appx. 313, 2004 WL 339590, *3 (10th Cir. 2004); (quoting *Smith v. Losee,* 485 F.2d 334, 341 (10th Cir. 1973)).  The U.S. Supreme Court has emphasized that absolute judicial immunity was not affected by or abolished by Section 1983.  *Pierson v. Ray,* 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800 (1982).

The Tenth Circuit has recognized that "officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." *Guttman v. Khasla,* 446 F.3d 1027, 1033 (10th Cir. 2006) (hearing officer for New Mexico Board of Medical Examiners was entitled to absolute immunity), *citing Butz v. Economou,* 438 U.S. 478, 514 (1978); *Horwitz v. State Bd. of Med. Examiners of State of Colo.,* 822 F.2d 1508, 1513 (10th Cir. 1987) (members of State Board of Medical Examiners performing adjudicatory and prosecutorial functions enjoyed absolute immunity for actions taking in filing

formal complaint).[3]  The Court has explained that "[t]here exists a strong need to ensure that individual Board members perform their functions for the public good without harassment or intimidation." *Horwitz,* 822 F.2d at 1515.  The Court further emphasized that "[t]here exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits" in the context of regulating professional licensing.

Here, the Board ordered Ms. Tavernier to undergo mental health examinations following the receipt of a complaint about her fitness to practice nursing.  [Compl., ¶¶35, 37-41].  Following the examinations, the Board offered to enter into a Stipulation with Plaintiff restricting her RN license.  [Compl. ¶¶44-45].  Plaintiff executed the agreement yet later petitioned the Board to set aside the Stipulation or for a hearing on the issue of whether her waiver of a hearing was knowing, intelligent and voluntary.  [Compl., ¶ 58].  The Board exercised its discretion to deny the relief requested.  [Compl., ¶¶ 60-62].  The individual Board members served a quasi-judicial function with respect to each of these actions and are therefore, entitled to absolute immunity. *See Guttman,* 446 F.3d at 1032.[4]

---

[3] Executive Director Neguse and Manager Storm are each also entitled to absolute immunity for all actions taken in their roles as Board staff. Absolute judicial immunity extends to court personnel who perform "quasi-judicial" functions. *Whitesel v. Sengenberger,* 222 F. 3d 861, 867 (10th Cir. 2000).

[4] The DORA defendants also enjoy statutory immunity from civil liability. *See* §12-43-203(7).

**III.    The Eleventh Amendment bars Plaintiffs' claim that the State Defendants violated Tavernier's rights under the ADA.**

The Eleventh Amendment grants immunity to the states from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. Amend. XI.  The Supreme Court has repeatedly held States are immune to unconsented suits brought by their own citizens as well.  *Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 364 (2001).  Nonetheless, "Congress may . . . abrogate [state sovereign] immunity in federal court if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."  *Guttman,* 669 F.3d at 1117, quoting *Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 726 (2003).

A court considering whether Congress's intent to abrogate state sovereign immunity is a valid exercise of its enforcement power under § 5 must take into account: (1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the statute (here, the ADA) is "congruent and proportional" to the specific class of violations at issue. *Guttman*, 669 F.3d at 1117, citing *City of Boerne v. Flores*, 521 U.S. 507, 529-36 (1997). Courts approach each of the three prongs of the abrogation inquiry on a case by case

basis "[w]ith respect to the particular [governmental] services at issue [in] the case." *Guttman,* 669 F.3d at 1117, citing *Tennessee v. Lane,* 541 U.S. 509, 527 (2004).

### A.    The Alleged Title II Violation

The first step in the analysis requires this Court to identify the state's conduct that allegedly violated Title II's prohibition against disability discrimination in the provision of state services or programs.   *United States v. Georgia,* 546 U.S. 151, 159 (2006).  Here, the alleged conduct is the Board's decision to place restrictions on Plaintiff's professional license, as a result of her mental disability, and to publish these restrictions on the Department's website.  [Compl., ¶¶70, 73-74].  Plaintiff further complains about the Board's practice of including an "unsubstantiated" allegation in its Stipulation and Final Agency Order that she had a mental disability that may endanger the health or safety of patients.  [Compl., ¶¶71-72].

### B.    Fourteenth Amendment Claims

The second step in the analysis requires this Court to assess the asserted Fourteenth Amendment claims.  *Guttman,* 669 F.3d at 1113.  Tavernier alleges that Defendants violated the Fourteenth Amendment: (1) by failing "to modify the practice of including unsubstantiated allegations related to Plaintiff's disability in the Board's Stipulation and Final Agency Order; (2) and by depriving Plaintiff of a "pre-deprivation" hearing prior to imposing conditions on her license that are so restrictive, that she is unable to work.  [Compl., ¶¶79, 81-88].

When the basis for a Section 1983 claim is for an alleged deprivation of procedural due process, the claimant must show that (1) he or she had a constitutionally protected property right; and if so, that (2) the individual was not afforded an appropriate level of process.  *Hatfield v. Bd. of Cnty.Comm'rs*, 52 F.3d 858, 862 (10th Cir. 1995) (quotations omitted).  Plaintiff has a property interest in her nursing license.  *See Stidham v. Peace Officer Standards & Training,* 265 F.3d 1144, 1150 (10th Cir. 2007).

Due process does not require that the defendant in every civil case actually have a hearing on the merits.  *Boddie v. Connecticut*, 401 U.S. 371, 379 (U.S. 1971). The United States Supreme Court has acknowledged that "the hearing required by due process is subject to waiver." *Boddie, supra; see e.g., D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185 (1972) ("The due process rights to notice and hearing prior to a civil judgment are subject to waiver.").  This parallels the recognition of waiver in the criminal context where personal liberty, rather than a property right, is involved.  *D.H. Overmyer Co.,*  405 U.S. at 185.  There is nothing unconstitutional about asking an individual to waive his or her due process rights provided the waiver is knowing and voluntary. *See Democratic Nat'l Comm. v. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012) ("Constitutional rights may be contractually waived where the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with

10

full understanding of the consequences of the waiver." (internal quotation marks omitted)).

The allegations underlying the execution of the Stipulation and Final Agency Order demonstrate that the constitutional standard of waiver has been fully satisfied in this case. *See Petty v. Dep't of Human Serv.,* 2010 U.S. Dist. LEXIS 75205 (N.D. Okla. June 9, 2016). Here, following a report of Tavernier's failure to properly record patient information and as a result of two mental health and neuropsychological examinations, the Board initiated disciplinary action against Plaintiff's license. Plaintiff admits she received a Stipulation and Final Agency Order from the Board and understood it restricted her nursing practice for two years and required her to obtain a Practice Monitor. [Compl., ¶44-45]; *see* Defendants' Exhibit A, Stipulation and Final Agency Order, Case No. 2-14-494, Before the State Board of Nursing, p. 3, ¶6(i), pp. 4-8.[5] Paragraph 5 of the Stipulation provided that Tavernier understood she had the right to be represented by counsel and the right to a formal disciplinary hearing pursuant to §§ 12-38-116.5

---

[5] At the 12(b)(6) dismissal stage, the court is typically confined to the pleadings alone, but "[i]t is . . . well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *188 LLC v. Trinity Indus., Inc.,* 300 F.3d 730, 735 (7th Cir. 2002) (citing *Wright v. Assoc. Ins. Cos. Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994)). Because Tavernier's complaint repeatedly references the Stipulation, it is proper for this court to consider the text of the Stipulation in considering the motion to dismiss this case, without converting the motion into one for summary judgment. *Alvarado v. KOB-TV, L.L.C.,* 493 F.3d 1210, 1215 (10th Cir. 2007); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384-85 (10th Cir. 1997).

and 24-4-105, C.R.S.  Exh. A, p. 1, ¶5(a) and (b).  Tavernier does not allege that the Stipulation and Final Agency Order lacks a clear waiver of hearing rights.  *See Perry, supra.*  Indeed, the Stipulation expressly provides that by entering into the agreement, Tavernier "knowingly and voluntarily waives the right to a hearing, admits the facts contained in this Order, and relieves the Board of the burden of proving such facts; . . . ."  *Id.* at ¶5(c).  Finally, the Stipulation provides that by entering into the agreement, Tavernier "knowingly and voluntarily" waived her right to present a defense by oral and documentary evidence and to cross-examine witnesses.  *Id.* at ¶5(d).  Plaintiff has not and cannot allege that she had a clearly established Fourteenth Amendment right to have the Stipulation further explained to her by the Defendants.  [Compl., ¶¶47-48].   In any event, Plaintiff does not allege that she sought further information or clarification from the Board or DORA staff and was denied the same.  [Compl., ¶59(b)].

Because Plaintiff has failed to allege facts supporting her claim that the Defendants violated a clearly established right under the Fourteenth Amendment, her claims must solely rest on alleged Title II violations of the ADA.

## C.    Nature of the Constitutional Right at Issue

Under the Fourteenth Amendment, a state may be subject to a statutory suit under Title II of the ADA, even if there is no allegation of an actual Fourteenth Amendment violation.  *Lane,* 541 U.S. at 523.  As such, the next step requires this

12

Court to determine the nature of the constitutional right at issue. *City of Boerne v. Flores,* 521 U.S. 507, 529-36 (1997). As was the case in *Guttman, supra,* the right at issue here is a disabled individual's right to practice in her chosen profession. *Guttman,* 669 F.3d at 1118. The Tenth Circuit in *Guttman* held that (1) the right to practice in a chosen profession is not a fundamental right; (2) the evidence of a widespread pattern of irrational state discrimination in professional licensing is minimal; and (3) Title II "prohibits a significant range of state action in the licensing realm that would easily survive rational basis review." *Id.* at 1124. Therefore, the Tenth Circuit concluded that Title II did not validly abrogate sovereign immunity in the context of professional licensing policies and procedures aimed at promoting public safety in the delivery of healthcare services. *Id.* at 1125. Accordingly, Plaintiff's ADA claim is barred by the Eleventh Amendment.

## IV. The individual Defendants are entitled to qualified immunity for their actions taken in good faith to enforce Board standards of conduct and competency, and, to protect the public.[6]

---

[6] Because Plaintiff's Section 1983 claim seeks monetary damages from the State of Colorado – in this instance, the Colorado Board of Nursing, this claim too is barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). Congress did not intend 42 U.S.C. §1983 to abrogate Eleventh Amendment immunity or override state immunity. *Quern v. Jordan*, 440 U.S. 332, 337, 340-45 (1979). Furthermore, suits for damages against public officials in their official capacity are equivalent to suits against the public entity and are barred for the same reason that suits against the State or its agencies are barred. *Id.; Pruitt v. Hess*, 923 P.2d 325, 327 (Colo. App. 1996), *cert. denied* (Colo. 1996). Finally, the State of Colorado, and its employees acting within their official capacities, are not "person[s]" subject to liability for damages under 42 U.S.C. § 1983. *See Will v. Michigan Dept. of State Police*, 109 S. Ct. 2304, 2312 (1989).

To the extent that Plaintiff intended to state any claims for damages against the Defendant Board members, Executive Director Neguse or Manager Storm, these defendants are entitled to qualified immunity.[7]  Plaintiffs have not set forth facts to demonstrate that the Defendants' conduct violated any of Plaintiffs' constitutional rights, or, if it did, the rights were not so established that the Defendants knew or should have known that their conduct would violate Plaintiffs' constitutional rights and therefore, Defendants are entitled to qualified immunity for their discretionary actions taken in good faith.

Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800 (1982). A constitutional right is "clearly established" if the "contours of the right are sufficiently clear that a

---

[7] If a defendant is sued in his individual capacity, the complaint must allege facts which, if proven, would show that the defendant personally participated in the alleged violation. Otherwise, the complaint fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Plaintiff fails to allege an affirmative link between the alleged constitutional violations and the participation by each individual Defendant in those violations. As the case law demonstrates, it is not enough for Plaintiffs to allege that the defendants worked at the Department of Regulatory Agencies at the time of the alleged violations. Moreover, an official cannot be held liable for unconstitutional conduct merely because he or she has general supervisory responsibility. *Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996); *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991).  To the extent that Plaintiff's claims against Neguse or Storm are based upon any supervisory authority that they may have, her claims lack sufficient allegations of personal participation to state a constitutional violation.

reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Ordinarily, in order for a plaintiff to demonstrate that a law was clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

Once the defendant raises a qualified immunity defense, the plaintiff bears a heavy two-part burden to establish that the defendant's conduct violated a constitutional or statutory right; and, that the right was clearly established at the time of the violation. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If no constitutional right would have been violated were the allegations established, the analysis ends there. *Id.* If the law supporting the allegedly violated rights was not clearly established, then immunity must lie. *Id.*

Under the standard set forth above, Plaintiff cannot satisfy the first prong of the qualified immunity test, and therefore the court must grant the Defendants qualified immunity.

**A.  Plaintiff was accorded due process at every stage of the disciplinary action taken by the Defendants.**

Procedural due process requires that administrative agencies "be fundamentally fair to the individual in the resolution of a legal dispute involving governmental action that threatens to deprive an individual of a significant

15

property interest." *deKoevend v. Board of Education,* 688 P.2d 219, 227 (Colo. 1984). In the context of any agency proceeding, this means that the respondent must receive adequate notice of the nature of the proceedings and a reasonable opportunity to be heard. *Mathews v. Eldridge,* 424 U.S. 319, 335 (1976). The process available and followed by the Board and DORA satisfied this standard.

As set forth above, the allegations of Plaintiff's Complaint demonstrate that with respect to the disciplinary action taken against her, she received notice and an opportunity to participate in the process and that is all that the Constitution requires. [Compl., ¶¶ 34-35, 41-45, 53, 58-60; Exh. A, ¶5]. Plaintiff made a knowing and voluntary waiver of her right to a hearing and entered into a Stipulation and Final Agency Order that placed restrictions on her professional license. The Board considered her petition for a hearing to set aside the Stipulation and denied it. *Id.* at ¶¶58, 60-62. The government's interest here in the protection of the public in the delivery of healthcare services, was significant, and supports the process utilized by the Board and DORA to restrict Plaintiff's license. *See Ward v. Anderson,* 494 F.3d 929, 938 (10th Cir. 2007).

Having failed to establish a constitutional violation, the Plaintiff's procedural due process claims cannot advance past the first step of the qualified immunity analysis.

**B.     Even if Plaintiffs' Fourteenth Amendment rights were violated, defendants are entitled to qualified immunity for discretionary functions performed in good faith.**

As state officials performing discretionary functions, each of the individual Defendants are entitled to qualified immunity from claims for alleged violations of Fourteenth Amendment rights. *See Harlow, supra*, 457 U.S. at 818. If there has been any violation of Plaintiff's Fourteenth Amendment rights or other federally protected rights, the individual Defendants are entitled to qualified immunity because Plaintiff cannot show that the contours of any right on which she relies were clearly established during the time period in question such that each Defendant should have known that their conduct was violating that right. *See Anderson, supra,* 483 U.S. at 640 ("The contours of the right [claimed to be violated] must be sufficiently clear that a reasonable official should understand that what he is doing violates that right.").

Pursuant to Colorado law, the Board of Nursing investigated a complaint about Plaintiff's ability to practice nursing in compliance with professional standards. *See* §§ 12-38-116.5, 117, C.R.S. The Board enforced these standards by requiring Plaintiff to submit to mental and neuropsychological evaluations and ultimately presented Plaintiff with a Stipulation and Final Agency Order that imposed certain restrictions on her license for two years. [Compl., ¶¶35, 37, 39, 44-45, 57]. The Board also published the Order on its website. *Id.* After executing the

17

agreement, Plaintiff sought to have the Order set aside or a hearing before the Board to determine if her waiver of a right to a hearing was knowing and voluntary. *Id*. at ¶58.  The Board exercised its discretion and denied the request.  *Id*. at ¶62.

In the absence of any existing U.S. Supreme Court or Tenth Circuit Court of Appeals stating otherwise, the Board was entitled to impose disciplinary action following receipt of the complaint concerning Plaintiff's fitness to practice nursing and to publish the same on its website.  The Board was further entitled to deny Plaintiff's request to set aside the Stipulation or for a hearing as to whether her waiver was knowing and voluntary.  *See Medina*, 960 F.2d at 1498.

**V.     Plaintiff fails to demonstrate she is entitled to injunctive relief pursuant to Section 1983.**

Although not mentioned by Plaintiff, her request for a "preliminary and permanent injunction ordering a hearing before a neutral hearing officer to determine whether [Plaintiff] violated the Nurse Practice Act" and a hearing on whether she "made a knowing, intelligent and voluntary wavier of her right to a due process hearing," [Compl., p. 13], appears to be grounded in the provisions of F.R.C.P. Rule 65, the federal procedural rule set out to establish the parameters of the injunctive authority of the federal courts.

The determination to grant or deny any permanent injunctive relief is within the full discretion of the Court.  Because a preliminary injunction is an extraordinary remedy, Plaintiff must show that her right to this form of relief is

clear and unequivocal.  *Schier v. Univ. of Colo.,* 427 F.3d 1253, 1258 (10th Cir. 2005).

Plaintiff, as the movant, bears the burden of establishing that (1) she will suffer an

irreparable injury unless the injunction issues; (2) that remedies available at law,

such as monetary damages, are inadequate to compensate for that injury; (3) that,

considering the balance of hardships between the plaintiff and defendant, an

equitable remedy is warranted; (4) that the public interest would not be disserved

by a permanent injunction; and (5) that there is a substantial likelihood of success

on the merits.  *Id.; Crandall v. City and County of Denver,* 594 F.3d 1231, 1235-

1236 (10th Cir. 2010).

The harm alleged by Plaintiff is not irreparable because she has no injury

and even if she did, the injury is speculative.  At the outset, Plaintiff does not allege

how she would be injured if a hearing on the underlying disciplinary action or her

waiver of a right to a hearing does not occur.  Indeed, she does not allege that she

has been barred from the practice of nursing altogether.  To the extent her

complaint implies that the Board's action has caused or will cause third parties to

discriminate against her in employment, the injury is speculative.  For an injury to

be irreparable harm, it must be "certain, great, actual and not theoretical."

*Salehpoor v. Shahinpoor,* 358 F.3d 782, 785 (10th Cir. 2004).  The potential harm

implied by Plaintiff falls far short of this stringent standard of actuality.  *See Caiola*

*v. Saddlemire,* 2013 U.S. Dist. LEXIS 43208, at *4 (D. Conn. March 27, 2013)

(finding that the "stigma" of expulsion and any resulting interference with student's

19

academic career were speculative).  Plaintiff must understand as much, given that she made no effort to seek or secure preliminary injunctive relief or a temporary restraining order at the point of filing her Complaint other than the inclusion of such relief in her Prayer for Relief.

Moreover, as explained above, Plaintiff cannot demonstrate a likelihood of success on the merits.  She has not stated allegations demonstrating the Board's conduct violated a clearly established constitutional right where she executed a knowing and voluntary waiver of her right to a hearing and stipulated to the disciplinary action taken.  Exh. A., ¶5.  Moreover, her claims are otherwise barred by the Eleventh Amendment.

Finally, there is also nothing alleged in the Complaint to demonstrate that any requested injunction will not hamstring efforts to regulate the practice of nursing by Plaintiff in a manner far more injurious to the well-being of the public than might ever be outweighed by Plaintiff's speculative concern that third parties will discriminate against her in employment or some other unspecified injury.  Any injunctive relief fashioned would necessitate the imposition of an extraordinary restraint on the ability of state authorities to regulate Plaintiff's nursing practice, within the ambit of state law.

Plaintiff has not alleged a single fact to satisfy her significant burden to demonstrate entitlement to the extraordinary relief she has requested.  Her claim seeking injunctive relief must be dismissed.

CYNTHIA H. COFFMAN
Attorney General


*s/Amy Colony*
_____

AMY COLONY*
Senior Assistant Attorney General
Tort Litigation
Civil Litigation and Employment Law
  Section
Attorneys for Defendant

1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6615
FAX:  720-508-6032
E-Mail:  amy.colony@coag.gov
*Counsel of Record

CERTIFICATE OF SERVICE

     I certify that on the 14th day of September, 2016, I served a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMiss** by filing through ECF, the official electronic court filing system, which provided notice to the parties, as specified below:

     Donna Dell'Olio
     Cornish & Dell'Olio, P.C.
     431 N. Cascade Avenue, Suite 1
     Colorado Springs, CO 80903
     ddellolio@cornishanddellolio.com
     eabramson@cornishanddellolio.com


                         *Mary A. Brown*
                         _____

22