**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02086-STV

CAROL TAVERNIER,

      Plaintiff,

v.

COLORADO STATE BOARD OF NURSING, a public entity,
WENDY COLON, in her official capacity,
MATTHEW FOGEL, in his official capacity,
KRISTINE REUSS, in her official capacity,
THERESA CURE, in her official capacity,
AMY STORM, in her official capacity, and
JOE NEGUSE, in his official capacity,

      Defendants.

_____

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**
_____

Magistrate Judge Scott T. Varholak

      This matter comes before the Court on Defendants' Motion to Dismiss (the "Motion"), filed September 14, 2016. [#20].  This Court has carefully considered Plaintiff's Complaint [#1], the Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the instant Motion.  For the following reasons, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND[1]

Plaintiff obtained her license to practice as a licensed nurse in 1982 and her license to practice as a professional nurse in 2011.  [#1, ¶ 12].  Plaintiff began working for Pikes Peak Hospice and Palliative Care in Colorado Springs, Colorado ("Pikes Peak") in or around 2010.  [*Id.*, ¶ 14].  In 2013, Plaintiff worked for Pikes Peak Mondays through Fridays from 8:00 a.m. until 5:00 p.m., providing nursing services to patients in their homes.  [*Id.*, ¶ 15].  Plaintiff alleges that although she attempted to perform all required charting tasks related to her patient visits "at bedside" during the visits, "[b]ecause of the demands on her time," Plaintiff completed some charting, including patient summaries, after hours.  [*Id.*, ¶ 16].  Plaintiff contends that she worked on and off the clock during evening hours, almost every day, performing charting tasks related to her patient visits.  [*Id.*, ¶ 15].  Plaintiff alleges that charting at home after hours was "common practice" by employees of Pikes Peak.  [*Id.*, ¶ 17].  Plaintiff alleges that it was not uncommon for Pikes Peak nurses, including Plaintiff, to fall behind in their charting responsibilities as a result of their heavy caseloads.  [*Id.*, ¶ 23].

On or before November 22, 2013, Plaintiff expressed to her supervisor a need to take time off due to work stress.  [*Id.*, ¶ 27].  Shortly thereafter, Pikes Peak conducted an audit of Plaintiff's charting.  [*Id.*].  In connection therewith, Pikes Peak administrators discovered that Plaintiff had failed to record all of the required information in her patients' medical records.  [*Id.*, ¶ 28].  In December 2013, while Plaintiff was on leave pursuant to the Family Medical Leave Act, Plaintiff was called back into work for two days to complete charting for certain patient records.  [*Id.*, ¶ 29].  Because Plaintiff was unable to answer certain questions to her manager's satisfaction, Pikes Peak conducted a second audit of Plaintiff's charting.  [*Id.*, ¶ 31].  As a result of the alleged deficiencies

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint, which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

in Plaintiff's charting, Pikes Peak terminated Plaintiff's employment and made a complaint concerning Plaintiff to the Colorado State Board of Nursing (the "Board of Nursing"). [*Id.*, ¶¶ 33-34].

Almost a year later, in December 2014, the Board of Nursing ordered Plaintiff to undergo a mental examination with a mental health professional employed by an organization known as Peer Assistance Services. [*Id.*, ¶ 35]. Based upon Plaintiff's responses to memory-type questions during that examination, Plaintiff was ordered to submit to neuropsychological testing by a psychologist selected by the Board of Nursing, Dr. Stephanie S. Huzij. [*Id.*, ¶¶ 38-39]. Following the testing, Dr. Huzij issued a report to the Board of Nursing that diagnosed Plaintiff with "Other Specified Neurodevelopmental Disorder," which according to Plaintiff's Complaint, means Plaintiff "has a long standing learning disability which include[s] memory deficits and problems with concentration." [*Id.*, ¶ 41]. Dr. Huzij's report noted that Plaintiff had developed strategies and methods to cope with and accommodate for her disability. [*Id.*, ¶ 42]. Dr. Huzij also allegedly opined "unequivocally that '[Plaintiff] is safe to practice as an RN with reasonable skill and safety.'" [*Id.*, ¶ 43].

Following the receipt of Dr. Huzij's report, the Board of Nursing mailed Plaintiff a proposed stipulation and final agency order (the "Stipulation").[2]  [#1, ¶¶ 44, 46]. The

---

[2] Defendants submitted a copy of the Stipulation with the Motion and request that the Court consider its substance in deciding the Motion. [#20, p. 11 n.5; #20-1]. "In evaluating a motion to dismiss, [the court] may consider not only the complaint, but also the attached exhibits and documents incorporated into the complaint by reference." C*ommonwealth Prop. Advocates, LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Even "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Plaintiff does not challenge the authenticity of the Stipulation submitted by Defendants or otherwise object to the Court's consideration of the Stipulation in connection with Defendants' Motion. [#21]. Because the Stipulation is repeatedly referenced in the Complaint and is

Stipulation stated that Plaintiff was "subject to discipline pursuant to section 12-38-117(1)(c), (f), (h) and (j), C.R.S." and went on to define each of those grounds. [#20-1, ¶¶ 7, 9; #1, ¶ 53]. Subsection (j) defines as a "ground for discipline" a person who "[h]as a physical or mental disability which renders him unable to practice nursing with reasonable skill and safety to the patients and which may endanger the health or safety of persons under his care." [#20-1, ¶ 9; *see also* #1, 54]. The Stipulation provided for a two-year probation during which time Plaintiff would be restricted from practicing certain types of nursing and would be required to obtain a Practice Monitor with whom she would be required to work 32-80 hours every two weeks throughout the probation period. [#1, ¶ 45; #20-1, ¶¶ 10-14].

Plaintiff was out of state when the Stipulation was received at her home in Colorado Springs. [#1, ¶ 51]. Plaintiff alleges that she did not understand many of the terms in the Stipulation or cover letter sent by the Board of Nursing. [*Id.*, ¶ 49]. The nine-page Stipulation was never discussed or explained to Plaintiff by anyone from the Board of Nursing. [*Id.*, ¶ 47]. Plaintiff allegedly understood the Stipulation to mean that the Board of Nursing "had already found her 'guilty'" of the misconduct described therein and that she would lose her nursing license if she did not sign the Stipulation and return it by the date requested by the Board of Nursing. [*Id.*, ¶¶ 46, 50]. Plaintiff did not understand that if she chose not to sign the Stipulation, she would receive a fair hearing with a neutral officer. [*Id.*, ¶ 48]. Plaintiff did not understand that by signing she was admitting that: (1) she had negligently practiced nursing in a manner "inconsistent with the health and safety of persons under [her] care" and (2) she had "a mental disability which renders [her] unable to practice nursing with reasonable skill and safety …" [*Id.*, ¶ 54 (quoting #20-1, ¶ 9)]. Plaintiff contends that she would not have signed the Stipulation if she had understood she was admitting these allegations. [#1, ¶ 56].

central to Plaintiff's claims, the Court finds it appropriate to consider the Stipulation in evaluating Defendants' Motion.

Upon receipt of the signed Stipulation, the Board of Nursing published the Stipulation on its website, including the allegation that Plaintiff "had a mental disability which rendered her unable to practice nursing with reasonable skill and safety or that she negligently practiced nursing." [*Id.*, ¶ 57]. Plaintiff contends that neither of these allegations is true. [*Id.*, ¶ 55].

Plaintiff subsequently retained counsel and, on or about March 22, 2016, petitioned the Board of Nursing to set aside the Stipulation or grant her a hearing on the issue of whether she had made a knowing and voluntary waiver of her right to a hearing. [*Id.*, ¶ 58]. In support, Plaintiff submitted an affidavit explaining that she did not understand that she had a choice about signing the Stipulation or that she was entitled to receive a fair hearing if she did not sign. [*Id.*, ¶ 59]. On July 27, 2016, the Board of Nursing considered and denied Plaintiff's petition either: (1) without hearing testimony or receiving any evidence that contradicted Plaintiff's affidavit; or (2) without providing Plaintiff an opportunity to appear and confront any evidence that contradicted her affidavit. [*Id.*, ¶¶ 60, 61].

Plaintiff contends that she has been unable to find employment as a result of the Board of Nursing publicly publishing on its website the allegedly false accusation that Plaintiff has a mental disability that may endanger the health and safety of patients and that she negligently provided care to her patients. [*Id.*, ¶ 64].

On August 17, 2016, Plaintiff filed the instant lawsuit asserting three causes of action and naming as defendants the Board of Nursing and six individual defendants.[3]

---

[3] Defendants Colon, Fogel, Reuss and Cure (collectively, the "Board Member Defendants") are alleged to be board members of Panel B of the Board of Nursing. [#1, ¶ 6]. Defendant Neguse is alleged to be the Executive Director of the Colorado Department of Regulatory Agencies ("DORA"). [*Id.*, ¶ 11]. The Board of Nursing is an agency of the Division of Professions and Occupations within DORA. [#20 at 2 (citing COLO. REV. STAT. § 12-38-104)]. Defendant Storm is alleged to be the Program Director for the Board of Nursing. [#1, ¶ 9]. Although Defendants contend that Storm actually is an Intake and Contract Manager for the Board of Nursing [#20 at 2 n.1], Defendants fail to provide any evidence to support this contention and the Court must accept the

[#1].   In her first cause of action, Plaintiff alleges that the Board of Nursing violated Title II of the Americans with Disabilities Act (the "ADA") by: (1) disciplining Plaintiff because of her disability; (2) including in the Stipulation an unsubstantiated allegation regarding Plaintiff's disability—*i.e.*, that Plaintiff had a mental disability that may endanger the health and safety of patients; and (3) publishing the Stipulation, which included the allegedly unsubstantiated allegation regarding Plaintiff's disability, on a publicly accessible website.   [*Id.*, ¶¶ 70-73].   Plaintiff contends that the Board of Nursing's actions in violation of the ADA "have caused others to discriminate against Plaintiff because of her disability."   [*Id.*, ¶ 74].   In her second cause of action, Plaintiff asserts Defendants' actions violated the ADA and thus constitute a violation of her rights under the laws of the United States pursuant to 42 U.S.C. § 1983 ("Section 1983").   [*Id.*, ¶¶ 78-79].   In her third cause of action, Plaintiff alleges a Section 1983 claim for alleged violations of her due process rights under the Fourteenth Amendment based upon Defendants' (1) failure to provide Plaintiff with a hearing on the allegations for which she was disciplined that she violated the Nurse Practice Act; and (2) failure to provide Plaintiff with a hearing to determine whether Plaintiff made a knowing, intelligent and voluntary waiver of her right to a due process hearing.   [*Id.*, ¶¶ 84-88].   Plaintiff seeks injunctive relief ordering a hearing before a neutral hearing officer to determine whether Plaintiff violated the Nurse Practice Act or, in the alternative, a hearing before a neutral hearing officer to determine whether Plaintiff made a knowing, intelligent and voluntary waiver of her right to a due process hearing.   [*Id.* at 13].   In addition, Plaintiff seeks compensatory and consequential damages, including an award of monetary damages for the publication of allegedly false information about her disability that allegedly has caused others to discriminate against her.   [*Id.*].

allegations in the Complaint as true at this stage of the litigation.   Regardless, Storm's title is immaterial to the resolution of the pending Motion.   The Board Member Defendants, Neguse and Storm are collectively referred to herein as the "Individual Defendants."

On September 14, 2016, Defendants filed the instant Motion to Dismiss, arguing that: (1) Individual Defendants are entitled to absolute quasi-judicial immunity; (2) the Eleventh Amendment bars Plaintiff's claim for violation of the ADA and her claims for damages under Section 1983; (3) Individual Defendants are entitled to qualified immunity to the extent Plaintiff intended to assert claims for damages against them; and (4) Plaintiff fails to demonstrate that she is entitled to injunctive relief pursuant to Section 1983. [#20]. Plaintiff filed a Response to the Motion on October 3, 2016 [#21] and Defendants filed their Reply in Support of the Motion on October 24, 2016 [#32]. The parties have all consented to having a United States Magistrate Judge conduct all proceedings, including trial, and to order the entry of a final judgment [#27, 28] and an Order of Reference has been entered referring the case to this Court for all purposes pursuant to D.C.COLO.LCivR 72.2(d) and 28 U.S.C. § 636(c) [#35].

## II.    STANDARD OF REVIEW

### A. Lack of Subject Matter Jurisdiction

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate for any claim over which the Court lacks subject matter jurisdiction. Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir.2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir.2003)). Here, Defendants make a facial attack on the allegations of subject matter jurisdiction based upon Eleventh Amendment immunity. *See Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Accordingly, the Court presumes all of the allegations in the complaint to be true. *Id.*

### B. Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted."   In evaluating such a motion, the Court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted). As a result, "'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"   *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

### III.   ANALYSIS

Defendants seek dismissal of Plaintiff's claims on the following grounds: (i) absolute quasi-judicial immunity for the Individual Defendants; (ii) Sovereign Immunity pursuant to the Eleventh Amendment for the Board of Nursing and Individual Defendants in their official capacities; (iii) qualified immunity for the Individual Defendants to the extent Plaintiff asserts claims for damages against them in their personal capacities; and (iv) failure to state a claim for injunctive relief.  Because, as the parties both concede, Sovereign Immunity implicates the Court's subject-matter

jurisdiction, the Court begins its consideration of the Motion with that issue and then addresses the remaining issues in turn.

### A. Sovereign Immunity

The Eleventh Amendment grants immunity to the states from "any suit in law or equity, commenced or prosecuted . . . by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the language of the Amendment applies only to suits against a State "by Citizens of another State," the Supreme Court "ha[s] repeatedly held that this immunity also applies to unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). "[B]ecause 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity,' the Eleventh Amendment provides immunity 'when [s]tate officials are sued for damages in their official capacity.'" *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

In *Ex parte Young*, 209 U.S. 123, 159-60 (1908), the Supreme Court recognized an exception to Eleventh Amendment immunity for actions seeking to enjoin a state official's ongoing constitutional violation. Subsequently, "the Supreme Court has applied *Ex parte Young* to allow suits for prospective relief against a state officer to enjoin future violations of federal law, but it has consistently prohibited any retroactive or compensatory relief." *Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 608 (10th Cir. 1998). Moreover, the *Ex parte Young* doctrine "has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

Nonetheless, the Supreme Court has held that "Congress may abrogate the State's Eleventh Amendment immunity." *Lane*, 541 U.S. at 517. To determine whether Congress has effectively abrogated the immunity, the Court "must resolve two predicate questions: first, whether Congress unequivocally expressed its intent to abrogate that

immunity; and second, if it did, whether Congress acted pursuant to a valid grant of constitutional authority." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000).

Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 559 (10th Cir. 2000). As a result, any dismissal premised thereon should be a dismissal without prejudice. *See Barnes v. United States*, 776 F.3d 1134, 1151 (10th Cir. 2015) (stating that jurisdictional dismissals should ordinarily be without prejudice).

### 1. ADA Claim

Defendants argue that Plaintiff's ADA claims are barred by the Eleventh Amendment.[4]  [#20 at 8-13].  Plaintiff responds that Congress validly abrogated any claim of Sovereign Immunity for Plaintiff's ADA claims.  [#21 at 9-18].  Congress unequivocally expressed its intent to abrogate Eleventh Amendment immunity for ADA claims by enacting the following language: "A State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter." 42 U.S.C. § 12202; *see also Lane*, 541 U.S. at 518. The question that remains is "whether Congress acted pursuant to a valid grant of constitutional authority" when it expressed this intent. *Kimel*, 528 U.S. at 73.

---

[4]  Plaintiff appears to assert her ADA claim only against the Board of Nursing as only the Board of Nursing is identified in the allegations specific to that claim.  [#1, ¶¶ 66-75]. To the extent Plaintiff asserts the ADA claim against Individual Defendants in their official capacities, "[o]fficial-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Graham*, 473 U.S. at 165 (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, n.55 (1978)).  To the extent Plaintiff purports to assert ADA claims against Individual Defendants in their personal capacities, no such cause of action is available under Title II of the ADA.  "[O]nly public entities, and not individual public employees . . . may be held liable under the ADA." *Smith v. Glanz*, 662 F. App'x 595, 597 (10th Cir. 2016) (citing *City and Cty. of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1773 (2015)).  To the extent Plaintiff asserts Title II ADA claims against Individual Defendants in their personal capacities, the Court DISMISSES those claims.

To resolve that question, the Court must:

determine in the first instance, on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*United States v. Georgia*, 546 U.S. 151, 159 (2006).

### a. Step One: ADA Claims

In the first step, the Court thus must "identify the state's conduct that allegedly violated Title II's prohibition against disability discrimination in the provision of state services or programs." *Guttman v. Khalsa* (*Guttman II*), 669 F.3d 1101, 1113 (10th Cir. 2012). Here, Plaintiff alleges that Defendants violated Title II of the ADA by: (1) disciplining Plaintiff because of her disability; (2) including in the Stipulation an unsubstantiated allegation regarding Plaintiff's disability—*i.e.*, that Plaintiff had a mental disability that may endanger the health and safety of patients; and (3) publishing the Stipulation, which included the allegedly unsubstantiated allegation regarding Plaintiff's disability, on a publicly accessible website. [#1, ¶¶ 70-73]. Plaintiff further alleges that this conduct "caused others to discriminate against Plaintiff because of her disability." [*Id.*, ¶ 74]. Defendants do not dispute that Plaintiff has stated a claim under Title II. [#20 at 9].

### b. Step Two: Fourteenth Amendment Claim

"The second step requires [the Court] to assess the asserted Fourteenth Amendment claims." *Guttman II*, 669 F.3d at 1113. Here, Plaintiff alleges Defendants violated her due process rights under the Fourteenth Amendment by denying her "a pre-deprivation hearing because 'Plaintiff never made a knowing, intelligent and voluntary waiver of her right to a due process hearing before she was deprived of her property.'"[5]

---

[5] In the Complaint, Plaintiff appears to allege that Defendants also violated her due process rights by denying her request for a hearing on the issue of whether Plaintiff made a knowing, intelligent and voluntary waiver of her right to a due process hearing.

[#21 at 11 (quoting #1 (Complaint), ¶ 85)].   If Plaintiff has alleged an actual constitutional violation, "then [Defendants] cannot raise a sovereign immunity defense because 'insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity.'"   *Guttman II*, 669 F.3d at 1113 (quoting *Georgia*, 546 U.S. at 159)) (emphasis in original).[6]

"To assess whether an individual was denied procedural due process, 'courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the

---

[#1, ¶¶ 87-88].   However, Plaintiff does not raise this potential constitutional violation in the context of the abrogation argument, "and it is not the Court's obligation to create legal arguments for [her]."   *Zahourek Sys., Inc. v. Balanced Body Univ., LLC*, No. 13-CV-01812-RM-CBS, 2016 WL 1377165, at *13 (D. Colo. Apr. 7, 2016); *see also Goodwin v. Bruggeman-Hatch*, No. 13-CV-02973-REB-MEH, 2014 WL 4723916, at *2 (D. Colo. Sept. 22, 2014) (finding that "an issue that is not raised in response to the apposite motions to dismiss or otherwise brought to the attention of the magistrate judge is waived").   In its Motion, Defendants contend that Plaintiff also alleged a Fourteenth Amendment violation based upon Defendants' failure "to modify the practice of including unsubstantiated allegations related to Plaintiff's disability in the Board's Stipulation and Final Agency Order."   [#20 at 9 (citing #1 (Complaint), ¶ 79)].   The referenced allegation, however, is located within Plaintiff's Second Cause of Action, which asserts a claim based upon alleged violations of the ADA as distinguished from the Fourteenth Amendment.   Moreover, Plaintiff does not argue any such potential constitutional violation in support of the abrogation analysis.

[6] In *Georgia*, the Supreme Court appeared to cabin the Fourteenth Amendment review to the conduct identified as violating Title II in Step One.   546 U.S. at 159 (requiring the court to determine "to what extent such misconduct [*i.e.*, the misconduct that violated Title II] also violated the Fourteenth Amendment").   The *Guttman II* Court, however, did not appear to engage in such a limited review of the plaintiff's Fourteenth Amendment claims, analyzing instead the first and second steps independently.   669 F.3d at 1113-16 (reviewing three Fourteenth Amendment challenges under the second step without determining whether those particular challenges also formed the basis for the Title II violation).   Nonetheless, the Court need not attempt to reconcile these potential differences; Plaintiff's Complaint fairly alleges that she was discriminated against by disciplining her because of her disability without first giving her a hearing on whether she could safely practice with reasonable skill and safety.   As a result, the conduct alleged to violate Title II also forms the basis for Plaintiff's Fourteenth Amendment claims.

individual afforded an appropriate level of process.'" *Hatfield v. Bd. of Cty. Comm'rs for Converse Cty.*, 52 F.3d 858, 862 (10th Cir. 1995) (quoting *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir.1994)).  Defendants concede that "Plaintiff has a property interest in her nursing license." [#20 at 10].  The question then is whether Plaintiff was afforded an appropriate level of process.

"[O]rdinarily one who has a protected property interest is entitled to some sort of hearing before the government acts to impair that interest, although the hearing need not necessarily provide all, or even most, of the protections afforded by a trial." *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220 (10th Cir. 2006) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  The Supreme Court has held, however, that "[t]he due process rights to notice and hearing prior to a civil judgment are subject to waiver."  *D. H. Overmyer Co. Inc., of Ohio v. Frick Co.*, 405 U.S. 174, 185 (1972).  The waiver of due process in the instant context, "parallels the recognition of waiver in the criminal context where personal liberty, rather than a property right, is involved."  *Id.*  As Defendants concede, to be effective, "the facts and circumstances surrounding the waiver [must] make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of the waiver."  [#20 at 10-11 (quoting *Democratic Nat'l Comm. V. Republican Nat'l Comm.*, 673 F.3d 192, 205 (3d Cir. 2012))].  In other words, "a waiver must be knowing and voluntary."  *Wilcox v. Aleman*, 3 F. App'x 920, 922 (10th Cir. 2001).  A waiver that is not knowing and voluntary "has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).  Moreover, "[t]here is a presumption against the waiver of constitutional rights, and for a waiver to be effective it must be clearly established that there was an intentional relinquishment or abandonment of a known right or privilege."  *United States v. Cherry*, 217 F.3d 811, 815 (10th Cir. 2000) (quoting *Brookhart v. Janis*, 384 U.S. 1, 4 (1966)).

It is undisputed that Plaintiff signed the Stipulation, which included an express waiver of rights as follows:

5.  Respondent understands that:

. . .

c.   By entering into this Order, Respondent knowingly and voluntarily waives the right to a hearing, admits the facts contained in this Order, and relieves the Board of its burden of proving such facts;

d.   By entering into this Order, Respondent knowingly and voluntarily waives the right to present a defense by oral and documentary evidence, and to cross-examine witnesses who would testify on behalf of the Board;

e.   By entering this Order, Respondent knowingly and voluntarily waives the right to seek judicial review of this Order . . ."

[#20-1 at 1-2].  Plaintiff contends, however, that these waivers are ineffective and void because she did not voluntarily and knowingly enter into the Stipulation.  Plaintiff alleges a number of facts to support this conclusion.  Plaintiff alleges that the Stipulation was mailed to her home while she was out of state and "was never discussed or explained to [Plaintiff] by anyone from the Board of Nursing."  [#1, ¶¶ 47, 51].  Plaintiff claims that she found the Stipulation and accompanying cover letter confusing, and understood from them that the Board of Nursing had already found her guilty of the charges alleged and that she would lose her nursing license completely if she did not sign and return the Stipulation by January 26, 2016.[7]  [*Id.*, ¶¶ 46, 47, 49].  Plaintiff alleges that she did not believe that signing the Stipulation was optional, did not understand that she would be entitled to a hearing if she chose not to sign the Stipulation, and did not understand that by signing the stipulation she was admitting to the factual allegations in the Stipulation. [*Id.*, ¶¶ 48, 54].  Plaintiff further contends that she would not have signed the Stipulation if she had understood that she was admitting those allegations.  [*Id.*, ¶ 56].  In March 2016, with the assistance of a lawyer, Plaintiff petitioned the Board of Nursing to set

---

[7] There is no indication in the record regarding when Plaintiff received the Stipulation or when she returned home from out of state.

aside the Stipulation, arguing that it was not a knowing and voluntary waiver of her right to a hearing.  [*Id.*, ¶ 58].

Accepting these allegations as true and drawing all reasonable inferences in favor of Plaintiff as the Court must at this stage, the Court finds these allegations sufficient to support her assertion that the waiver was not knowing and voluntary and thus violated her Fourteenth Amendment right to due process.  Defendants argue that the Court should accept the language of the Stipulation as determinative—*i.e.*, because the language of the Stipulation expressly states that Plaintiff is waiving her rights, that alone is sufficient to establish a valid waiver.  [#20 at 11-12].  Defendants do not cite any authority for the proposition that a signed waiver of rights standing alone is determinative.[8]  To the contrary, "[t]he determination of whether there has been an intelligent waiver of [a constitutional right] must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."  *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938) (discussing waiver of right to counsel).  Defendants argue that the Court should disregard Plaintiff's "subjective" allegations [#32 at 11, 12], but "the voluntariness of a

---

[8] In *Petty v. Dep't of Human Servs.*, No. 16-CV-109-GKF-FHM, 2016 WL 3211965, *3 (N.D. Okla. June 9, 2016), cited by Defendants, the court found allegations regarding a state official's involvement with a waiver form insufficient to establish liability, because "[t]here is nothing unconstitutional about asking an individual to waive his or her due process rights *provided the waiver is knowing and voluntary*" (emphasis added).  The court emphasized, however, that the plaintiff had not alleged either that the form "lack[ed] a clear waiver or rights" or that the defendant caused the plaintiff to be denied a hearing without obtaining a valid waiver.  *Id.*  Here, however, Plaintiff alleges both that the Stipulation was confusing and thus did not include a clear waiver and also that she was denied a hearing as a result of Defendants' failure to obtain a knowing and voluntary waiver.  Moreover, the court found that the plaintiff had adequately stated a due process violation against another defendant based upon allegations that she was only presented with portions of the form that did not include a "clear hearing waiver" and that the defendant "did not inform [plaintiff] that if she signed the agreement she would not receive a hearing."  *Id.*  Plaintiff here similarly alleges that she did not find the waiver provisions to be clear and none of Defendants explained the implications of the Stipulation to her.

waiver of constitutional protections . . . [is a] subjective issue[ ]." *United States v. McVeigh*, 940 F. Supp. 1541, 1560 (D. Colo. 1996); *see also Doe v. Woodford*, 508 F.3d 563, 570 (9th Cir. 2007) ("To determine the voluntariness of the plea, we look to the totality of the circumstances, examining both the defendant's subjective state of mind and the constitutional acceptability of the external forces inducing the guilty plea" (internal quotations omitted).); *United States v. Bonilla*, 86 F. App'x 545, 547 (3d Cir. 2004) (finding determination of whether plea is voluntary and knowing to be "subjective, highly individualized test"); *Catches v. United States*, 582 F.2d 453, 458 (8th Cir. 1978) (finding "test of whether a waiver is an informed one [to be] both subjective and objective").

Here, Plaintiff alleges that she did not understand the implications of the Stipulation and that Defendants never discussed or explained the Stipulation to her. Although the Court agrees that the language of the waiver provisions in the Stipulation appear clear, the Court notes that they are included within the context of a nine-page document titled "Stipulation *and Final Agency Order*."  [#20-1 at 1 (emphasis added)]. Although the Stipulation was sent to Plaintiff with a cover letter, the cover letter is not part of the record.  The Court thus must accept Plaintiff's allegation that she "did not understand many of the terms" utilized in the cover letter and thus it may have further contributed to her alleged confusion and misunderstanding of the effect of the Stipulation.  Drawing all reasonable inferences in favor of Plaintiff, Plaintiff may have signed the Stipulation under duress as she believed that the Board of Nursing had already found her "guilty" of the charges against her and that her license would be revoked, rather than suspended, if she did not sign and return the Stipulation by the specified date.

Furthermore, the Court must take into account the allegation that Plaintiff has "a long standing learning disability which included memory deficits and problems with concentration," which may have affected her ability to comprehend and appreciate the

effect of the nine-page written Stipulation.  [#1, ¶ 41].  Defendants argue that Plaintiff's contention that the waiver was not knowing, intelligent and voluntary "is undercut by her allegation that she was safe to practice nursing with reasonable skill and safety."  [#32 at 13].  There is no basis for the Court to make such a determination at this stage of the litigation.

Without offering any opinion regarding Plaintiff's likelihood of success on the Fourteenth Amendment claim, the Court finds the allegations in the Complaint sufficient to state a claim that Plaintiff's waiver of rights included within the Stipulation was not knowing and voluntary and thus that the denial of a hearing on the basis of the waiver was a violation of Plaintiff's due process rights.  Because Plaintiff has alleged an actual constitutional violation, Title II validly abrogates state sovereign immunity and Defendants cannot raise a sovereign immunity defense.  *Guttman II*, 669 F.3d at 1113.

The Court thus DENIES the Motion to the extent it seeks dismissal of Plaintiff's ADA claims on the basis of Eleventh Amendment immunity.

### c.  Step Three:  Fourteenth Amendment Claim

Step three involves an analysis to determine whether, in the absence of an allegation of an actual constitutional violation, Congress has nonetheless validly abrogated state sovereign immunity.  As the Tenth Circuit has explained, "'Congress' power "to enforce" the [Fourteenth] Amendment includes the authority both to remedy and to deter violation of rights guaranteed thereunder by prohibiting a somewhat broader swath of conduct' than that which the Amendment itself proscribes."  *Guttman II*, 669 F.3d at 1116 (quoting *Kimel*, 528 U.S. at 81).  Because the Court has determined that Plaintiff has alleged an actual constitutional violation, however, the Court need not reach step three of the analysis.

### 2.  Section 1983 Claims

Defendants also argue that Plaintiff's Section 1983 damages claims against both the Board of Nursing and Individual Defendants in their official capacities are barred by

the Eleventh Amendment.   [#20 at 13 n.6].   Plaintiff fails to respond to Defendants' argument.  Application of the Eleventh Amendment to Plaintiff's Section 1983 claims is much more straightforward because the Supreme Court has held that Section 1983 does not abrogate Eleventh Amendment immunity.  *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

The Court thus agrees that Plaintiff's Section 1983 claims against the Board of Nursing are barred by Eleventh Amendment immunity "regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth.*, 506 U.S. at 146.   The Court DISMISSES WITHOUT PREJUDICE Plaintiff's Section 1983 claims against the Board of Nursing.

Plaintiff's claims for monetary damages from Individual Defendants in their official capacities similarly are barred by the Eleventh Amendment.  *Peterson*, 707 F.3d at 1205.  The Court DISMISSES WITHOUT PREJUDICE Plaintiff's Section 1983 damages claims against Individual Defendants in their official capacities.

Plaintiff's claims against Defendants in their official capacities for prospective equitable relief, however, are not barred by the Eleventh Amendment.  *Hill v. Kemp*, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (noting that "the Eleventh Amendment generally will not operate to bar suits so long as they (i) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law, and (ii) are aimed against state officers acting in their official capacities, rather than against the State itself").

### B. Quasi-Judicial Immunity

Defendants argue that Plaintiff's claims against Individual Defendants are barred by the doctrine of absolute quasi-judicial immunity.[9]   [#20 at 5-7]  Since at least 1871,

---

[9] It is somewhat unclear whether Defendants argue for dismissal of the claims against Individual Defendants in both their personal and official capacities or only in their personal capacities on the basis of quasi-judicial immunity.   Quasi-judicial immunity, however, "only extends to claims against defendants sued in their individual—not official—capacities."   *VanHorn v. Oelschlager*, 502 F.3d 775, 779 (8th Cir. 2007)

the Supreme Court has recognized that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). Judges thus are immune from suit for all actions taken in their judicial capacity unless taken "in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 12 (1991).

"The Supreme Court has long recognized that officials in administrative hearings can claim the absolute immunity that flows to judicial officers if they are acting in a quasi-judicial fashion." *Guttman v. Khalsa* (*Guttman I*), 446 F.3d 1027, 1033 (10th Cir. 2006) (citing *Butz v. Economou*, 438 U.S. 478, 514 (1978)). "For an official at an administrative hearing to be protected by absolute immunity '(a) the officials' functions must be similar to those involved in the judicial process, (b) the officials' actions must be likely to result in damages lawsuits by disappointed parties, and (c) there must exist sufficient safeguards in the regulatory framework to control unconstitutional conduct.'" *Id.* (quoting *Horwitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1513 (10th Cir. 1987)).

In moving to dismiss under Rule 12(b)(6) based on a claim of absolute immunity, "[t]he official seeking absolute immunity bears the burden of showing that such immunity

---

(collecting cases); *see also Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000); *Schamp v. Shepack*, No. 06-CV-4015-JAR, 2006 WL 2850285, at *3 (D. Kan. Oct. 4, 2006). As such, quasi-judicial immunity also is inapplicable to Plaintiff's Title II ADA claim, which as discussed in *supra* note 4, may not be brought against Individual Defendants in their personal capacities. *See Smith*, 662 F. App'x at 597 (10th Cir. 2016) (finding that "the issue of judicial immunity simply never arises because no individual, including a state court judge, may be held liable under Title II of the ADA"). Thus, to the extent Defendants seek dismissal of any claim, including the ADA claim, brought against Individual Defendants in their official capacities based upon quasi-judicial immunity, the Motion is DENIED.

is justified for the function in question." *Borde v. Bd. of Cty. Comm'rs of Luna Cty., N.M.*, 423 F. App'x 798, 801 (10th Cir. 2011) (internal quotation omitted).

### 1. Board Member Defendants

Defendants argue that the application of quasi-judicial immunity in this case is controlled by the Tenth Circuit's analysis in *Horwitz* and *Guttman I,* which both applied quasi-judicial immunity to protect members of state boards of medical examiners.

In *Horwitz*, a medical doctor who had been summarily suspended by the Colorado State Board of Medical Examiners prior to conducting a full evidentiary hearing, sued the members of the board, "alleging that he had been subjected to unfounded complaints, summarily suspended from the practice of podiatry in violation of his Fourteenth Amendment due process rights, and defamed and subjected to outrageous conduct." 822 F.2d at 1510. The Tenth Circuit upheld the decision of the trial court, which had "accepted the allegations of Dr. Horowitz's complaint as true and found, as a matter of law, that the Board members were entitled to summary judgment on the immunity offense." *Id.* at 1515. More specifically, the Tenth Circuit found that: (1) the Board members "performed statutory functions both adjudicatory and prosecutorial in nature;" (2) "[t]here exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation;" and (3) "[t]here exist adequate due process safeguards under Colorado law to protect against unconstitutional conduct without reliance upon private damages lawsuits." *Id.*

In *Guttman I*, a medical doctor asserted claims against the administrative prosecutor and hearing officer of the New Mexico Board of Medical Examiners claiming that they violated Title II of the ADA and Section 1983 by revoking his medical license in a flawed state administrative proceeding. 446 F.3d at 1029, 1033. The Tenth Circuit noted that the plaintiff's claims against the hearing administrator were "nearly identical" to those presented in *Horwitz* yet the plaintiff had failed to offer any basis for distinguishing *Horwitz*. *Id.* at 1033. The Court thus found that the hearing administrator

was entitled to absolute immunity for the same reasons articulated in *Horwitz*. *Id.* The Court further held that the administrative prosecutor also was entitled to absolute immunity because his alleged violations of the plaintiff's rights under the Due Process Clause and the ADA were all "part of his prosecutorial duties." *Id.* at 1034.

The Court finds that the allegations here describe circumstances "nearly identical" to those presented by *Horwitz* and *Guttman I*.[10] Indeed, Plaintiff makes no attempt to distinguish these authorities. Instead, Plaintiff merely contends that the factual allegations from the Complaint cited in Defendants' Motion "do not prove the [ ] required elements of quasi-judicial absolute immunity." [#21 at 8]. The Court disagrees.

Examining the allegations in the Complaint, it is apparent that the Board Member Defendants, like the board members in *Horwitz*, "serve in the prosecutorial role in that they, among other things, initiate complaints, start hearings, make investigations, take evidence, and issue subpoenas . . . [and] also serve in the adjudicative role, as judges. Thus, the Board duties are 'functionally comparable' to a court of law." 822 F.2d at 1515. More specifically, all of the Board Member Defendants' alleged actions upon which Plaintiff's claims are based—*i.e.*, accepting the Stipulation which allegedly included unsubstantiated allegations related to disability; disciplining Plaintiff based upon her disability; and refusing to conduct a hearing either prior to instituting the discipline or to determine whether Plaintiff made a knowing, intelligent and voluntary

---

[10] That Plaintiff is a nurse rather than a medical doctor and thus subject to the authority of the Board of Nursing rather than a board of medical examiners is a distinction without a difference to the absolute immunity analysis. It is beyond dispute that the Board of Nursing provides the same function as the boards of medical examiners just in the context of a different medical profession. *See O'Neal v. Miss. Bd. of Nursing*, 113 F.3d 62, 67 (5th Cir. 1997) (finding members of Mississippi Board of Nursing entitled to absolute immunity, noting that "at least three of our sister courts have found medical/health profession boards and their members to be absolutely immune from liability when performing adjudicatory actions").

waiver of her right to a due process hearing—are "functionally comparable" to those regularly undertaken in the judicial process.

Given the important reputational and employment interests at stake in the disciplinary matters handled by the Board Member Defendants, it is clear that their actions are "likely to result in damages lawsuits by disappointed parties." *Horwitz*, 822 F.2d at 1513. Indeed, a review of authority relevant to this case demonstrates that members of medical and health profession boards routinely are subjected to lawsuits brought by disciplined parties. The Court thus finds that, as in *Horwitz*, "[t]here exists a strong need to insure that individual Board members perform their functions for the public good without harassment or intimidation" of damages lawsuits. *Id.* at 1515.

Finally, the Court finds that there "exist sufficient safeguards in the regulatory framework to control unconstitutional conduct." *Id.* at 1513. Plaintiff has not pointed to any safeguards present in *Horwitz* and *Guttman I* that are unavailable in proceedings before the Board of Nursing. Instead, Plaintiff merely argues that the allegations in the complaint, standing alone, are insufficient to establish the existence of sufficient safeguards. [#21 at 9]. As Defendants point out, however, the allegations in the Complaint make clear that Plaintiff: (1) received notice of the alleged violations against her; (2) would have been entitled to a hearing on the alleged violations had she not signed a waiver; and (3) had an opportunity to petition the Board to challenge the disciplinary action and request a hearing to determine whether the waiver was knowing and voluntary. [#32 at 8]. Moreover, the Stipulation, which "is referred to in the complaint and is central to the plaintiff's claim," *GFF Corp.*, 130 F.3d at 1384, outlines the procedural safeguards in place for disciplinary proceedings with citations to the pertinent sections of the Colorado Revised Statutes. [#20-1 at 1 (citing COLO. REV. STAT. §§ 12-38-116.5, 24-4-105)]. The Court notes that the procedural safeguards set out in Colorado Revised Statute section 24-4-105, which were enacted "to assure that all parties to any agency adjudicatory proceeding are accorded due process of law,"

apply equally to the actions of the Board of Nursing and the Colorado Board of Medical Examiners at issue in *Horwitz*.   *See Colo. State Bd. of Nursing v. Geary*, 954 P.2d 614, 616 (Colo. App. 1997) (finding procedural safeguards of section 24-4-105 sufficient to satisfy disciplined nurse's due process rights); *Colo. State Bd. of Med. Exam'rs v. Boyle*, 924 P.2d 1113, 1117 (Colo. App. 1996) (finding that disciplinary proceeding against medical doctor comported with due process where proceeding followed requirements of section 24-4-105).

Accordingly, the Court finds that Board Member Defendants are entitled to the protections of quasi-judicial absolute immunity and DISMISSES the damages claims against Board Member Defendants.

### 2.  *Neguse and Storm*

The only allegations in the Complaint specific to Storm state that she "published false information about [Plaintiff's] disability on the Board of Nursing's web-site" and the vague and conclusory statement that she allegedly "has the authority to act to grant [Plaintiff] the prospective relief she seeks here."   [#1, ¶¶ 9-10].   These allegations appear to refer to Plaintiff's contention that the Board of Nursing violated the ADA by "publish[ing] its Stipulation and Final Agency Order, which contains unsubstantiated allegations concerning [Plaintiff's] disability, on the Internet."   [*Id.*, ¶ 73].   The only allegation specific to Neguse merely states, again in a vague and conclusory manner, that he "has the authority to act to grant [Plaintiff] the prospective relief she seeks here." [*Id.*, ¶ 11].

The remainder of the allegations that potentially implicate Neguse and Storm refer only generically to "Defendants" as a group without any indication to which specific defendant(s) the allegation applies.[11]   Given that Neguse and Storm are alleged to hold

---

[11] Even these allegations against Defendants as a group are sparse and do not seem applicable to Neguse or Storm.  Plaintiff alleges only that "Defendants"  (1) were acting under color of state law [#1, ¶ 77]; (2) violated the ADA by failing to modify the practice of including unsubstantiated allegations in the Stipulation and failing to remove the

positions with significantly different responsibilities and authority from Board Member Defendants, the Court agrees with Defendants that such allegations are insufficient "to put each individual Defendant on notice of precisely what misconduct by whom allegedly violated [Plaintiff's] rights . . ." [#20 at 5 n.2].   As the Tenth Circuit has advised, in Section 1983 cases where a plaintiff sues a government agency and individuals in their personal capacities, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis in original).

The Court thus finds the allegations against Neguse insufficient to put him on notice of the basis for any purported claims against him and insufficient with regard to Storm with the exception of Plaintiff's claim related to the publication of the Stipulation on the Board's website.[12]

With regard to that claim, the Court finds that Storm is entitled to absolute quasi-judicial immunity.   Courts have extended absolute judicial immunity "to non-judicial officers where their duties had an integral relationship with the judicial process." *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000) (internal quotation omitted).   "Just as judges acting in their judicial capacity are absolutely immune from

---

alleged unsubstantiated allegation regarding Plaintiff's disability [*id.*, ¶ 79];   (3) denied Plaintiff's request for a hearing to determine whether she made a knowing, intelligent and voluntary waiver [*id.*, ¶ 87]; and (4) caused Plaintiff to suffer damages [*id.*, ¶ 89]. Given that neither Neguse nor Storm is a Board Member, the Court finds it unreasonable to infer that they participated in the decision to accept the allegedly unsubstantiated allegation in the Stipulation or to deny the request for a hearing.

[12] Similarly, the allegations against Neguse and Storm are insufficient to establish their alleged participation in the alleged Section 1983 violations.   As the Tenth Circuit has instructed, "[p]ersonal participation is an essential allegation in a [42 USC § 1983] claim." *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976).   The plaintiff must allege "a defendant's direct personal responsibility for the claimed deprivation of a constitutional right." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006).

liability under section 1983, 'official[s] charged with the duty of executing a facially valid court order enjoy[ ] absolute immunity from liability for damages in a suit challenging conduct prescribed by that order.'" *Turney v. O'Toole*, 898 F.2d 1470, 1472 (10th Cir.1990) (internal citation omitted; quoting *Valdez v. City & Cty. of Denver*, 878 F.2d 1285, 1286 (10th Cir. 1989)).   In order for a non-judicial state official to obtain such protection: (1) the judge issuing the disputed order must be immune from liability in his or her own right; (2) the officials executing the order must act within the scope of their own jurisdiction; and (3) the officials must only act as prescribed by the order in question.  *See Moss v. Kopp*, 559 F.3d 1155, 1163 (10th Cir. 2009).

The Court finds each of those elements met here.  As explained above, the Court finds that Board Member Defendants who issued the Stipulation are immune from liability in their own right.  The only action specifically attributed to Storm (no specific actions are attributed to Neguse) is the publication of the Stipulation on the Board of Nursing's publicly available website.  Plaintiff acknowledges that Storm was acting within the jurisdiction of her employment when she published the Stipulation.  [#1, ¶ 9]. In addition, publication of the Stipulation was expressly prescribed by the Stipulation. [*See* #20-1, ¶ 33 (noting that Stipulation "shall be open to public inspection and publicized pursuant to the Board's standard policies and procedures")].[13]

For the foregoing reasons, the Court DISMISSES the claims against Neguse and Storm.

---

[13] Plaintiff does not directly address the applicability of immunity to Storm's conduct, relying instead entirely upon her more general contention that the allegations in the complaint are insufficient to satisfy all the elements of a judicial immunity defense.  In her response, Plaintiff conflates the three requirements identified in *Horwitz* and *Guttman I* for an official at an administrative hearing to be protected by absolute immunity with the three separate requirements identified in *Moss* for a non-judicial state official to obtain such protection and concludes without analysis that these requirements were not satisfied by the allegations in the Complaint.  [#21 at 8-9].  The jurisprudence is clear, however, that these are separate requirements applicable to two separate types of defendants—state officials acting in a quasi-judicial role, on the one hand, and non-judicial state officials carrying out a judicial order, on the other.

### C.  Qualified Immunity

Because the Court finds Individual Defendants immune from suit pursuant to absolute quasi-judicial immunity, the Court need not reach Defendants' argument that Individual Defendants also are immune pursuant to qualified immunity.  *See Malina v. Gonzales*, 994 F.2d 1121, 1126 (5th Cir. 1993) ("Because we have found that [the defendant] had absolute  judicial immunity in issuing the contempt citation, we do not need to reach the qualified immunity inquiry."); *Crooks v. Maynard*, 913 F.2d 699, 701 (9th Cir. 1990) ("Since we affirm that [the defendant] is cloaked by absolute judicial immunity, we do not reach the question of qualified immunity."); *Kissell v. Breskow*, 579 F.2d 425, 428 n.4 (7th Cir. 1978) ("Our holding that quasi-judicial immunity applies to Breskow's actions herein, makes it unnecessary to consider the Kissells' arguments respecting qualified immunity."); *see also Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (finding that Court need not consider whether defendant was entitled to absolute quasi-judicial immunity where had already determined he was entitled to qualified immunity).

### D.  Sufficiency of Allegations to State a Claim for Injunctive Relief

Defendants argue that Plaintiff has failed to allege facts sufficient to support her request for injunctive relief.  Defendants contend that Plaintiff "as the movant, bears the burden of establishing that (1) she will suffer an irreparable injury unless the injunction issues; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, an equitable remedy is warranted; (4) that the public interest would not be disserved by a permanent injunction; and (5) that there is a substantial likelihood of success on the merits."  [#20 at 19 (citing *Schier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005))].  This, however, is the standard for obtaining a preliminary injunction.  Although Plaintiff's "Prayer for Relief" in the Complaint references a request for a "preliminary injunction," the Court does not understand Plaintiff to be seeking the

issuance of a temporary restraining order or preliminary injunction at this time. *See* D.C.COLO.LCivR 65.1 ("A temporary restraining order shall be requested by motion filed separately from the complaint."); *James Luterbach Const. Co. v. Adamkus*, 781 F.2d 599, 603 n.1 (7th Cir. 1986) ("As a matter of professional practice, counsel who seek temporary relief usually should make a motion for a preliminary injunction separate from the prayer for relief contained in the complaint. In addition to the demands of good practice, Rule 65(a)(2) of the Federal Rules of Civil Procedure seems to require a separate motion for temporary relief."); 11A Charles Alan Wright, et al., FEDERAL PRACTICE & PROCEDURE § 2949 (3d ed.) ("The appropriate procedure for requesting a preliminary injunction is by motion . . .")   Nor does Plaintiff's response to the Motion indicate that Plaintiff seeks the issuance of a preliminary injunction at this time.   [#21 at 21-22 (arguing that the Court should not evaluate the sufficiency of the allegations pursuant to Rule 12(b)(6), because a preliminary injunction is a form of relief not a cause of action)].

Instead, Plaintiff's Complaint seeks permanent injunctive relief to be awarded upon success on the merits of her claims.   "In order to grant a permanent injunction, four requirements must be satisfied: '(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing part[ies]; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Bachofer v. Creany*, No. 12-CV-03254-WYD-MJW, 2014 WL 7005234, at *4 (D. Colo. Dec. 10, 2014) (quoting *Klein–Becker USA, LLC v. Englert*, 711 F.3d 1153, 1164 (10th Cir. 2013)).   Having invoked the preliminary hearing standard, Defendants do not specifically address these elements.   Regardless, the Court finds that "[t]he appropriateness of the remedy need not be analyzed by the Court unless and until Plaintiff[] prevail[s]." *Roshandel v. Chertoff*, No. C07-1739MJP, 2008 WL 1969646, at *9 (W.D. Wash. May 5, 2008); *see also Pittsburgh League of Young Voters Educ. Fund. v. Port Auth. of Allegheny Cty.*, 2007 WL 1007968, *9 (W.D. Pa.

Mar. 30, 2007) ("A district court should not dismiss a claim for injunctive relief at this early stage of the proceedings when such relief could prove to be appropriate.").

Moreover, for the reasons stated above, the Court finds that Plaintiff's complaint states a viable claim for violation of Plaintiff's Fourteenth Amendment due process rights. As the Tenth Circuit has acknowledged, "[w]hen an alleged constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001) (quoting 11A Charles Allen Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995)); *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). Similarly, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Free the Nipple—Fort Collins v. City of Fort Collins, Colo.*, No. 16-CV-01308-RBJ, 2017 WL 713918, at *6 (D. Colo. Feb. 22, 2017) (collecting cases).

In its reply, Defendants argue for the first time that the Court should abstain from considering Plaintiff's claims for injunctive relief pursuant to *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). "[T]he *Burford* abstention doctrine [ ] generally recognizes that it may be appropriate for a federal court to abstain in a case where a decision from the federal court may frustrate the purpose of a complex state administrative system." *Oklahoma ex rel. Doak v. Acrisure Bus. Outsourcing Servs., LLC* ("*Doak*"), 529 F. App'x 886, 896 (10th Cir. 2013). The Supreme Court has cautioned, however, that "the power to dismiss recognized in *Burford* represents an extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (internal quotations omitted). The Supreme Court has limited the application of *Burford* abstention to situations where "there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case ... or [ ] where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public

concern." *Doak*, 529 F. App'x at 897 (quoting *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989) (internal quotation marks omitted)).

As an initial matter, because an opposing party does not have an opportunity to respond to arguments made in a reply brief, arguments raised for the first time in a reply brief generally are deemed waived.   *See United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011). Moreover, Plaintiff's claims both are federal in nature and do not implicate any "difficult questions of state law."  Although Defendants contend that "[a]ny injunctive relief fashioned would necessitate the imposition of an extraordinary restraint on the ability of the state authorities to regulate Plaintiff's nursing practice, within the ambit of state law" [#32 at 16], the injunctive relief sought by Plaintiff would merely require Defendants to conduct a hearing of the type already available under the state regulatory framework and to which it is undisputed Plaintiff would have been entitled under state law if she had not signed the Stipulation.

Accordingly, the Court DENIES the Motion to the extent it seeks dismissal of Plaintiff's injunctive relief claims for failure to state a claim or abstention pursuant to *Burford*.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss [#20] as follows:

(1)    **GRANTED** to the extent it seeks dismissal of Plaintiff's ADA claims against Individual Defendants in their personal capacities and that such claims be **DISMISSED WITH PREJUDICE**;

(2)    **DENIED** to the extent it seeks dismissal of Plaintiff's ADA claims against the Board of Nursing or the Individual Defendants in their official capacities on the basis of Eleventh Amendment immunity;

(3)     **GRANTED** to the extent it seeks dismissal of Plaintiff's Section 1983 claims against the Board of Nursing on the basis of Eleventh Amendment immunity and that such claims be **DISMISSED WITHOUT PREJUDICE**;

(4)     **GRANTED** to the extent it seeks dismissal of Plaintiff's Section 1983 claims for damages against the Individual Defendants on the basis of Eleventh Amendment immunity and that such claims be **DISMISSED WITHOUT PREJUDICE**;

(5)     **DENIED** to the extent it seeks dismissal of Plaintiff's Section 1983 claims for prospective injunctive relief against the Individual Defendants in their official capacities on the basis of Eleventh Amendment immunity;

(6)     **GRANTED** to the extent it seeks dismissal of Plaintiff's damages claims against the Board Member Defendants in their personal capacities on the basis of absolute immunity and that such claims be **DISMISSED WITH PREJUDICE**;

(7)     **GRANTED** to the extent it seeks dismissal of all of Plaintiff's claims against Neguse and Storm and that all claims against Neguse and Storm be **DISMISSED WITHOUT PREJUDICE**; and

(8)     **DENIED** to the extent it seeks dismissal of Plaintiff's prospective injunctive relief claims for failure to state a claim or pursuant to *Burford* abstention.

DATED:  March 17, 2017                    BY THE COURT:

                                           s/Scott T. Varholak
                                          United States Magistrate Judge